[No. 892-3. Division Three. April 22, 1975.]

GARY POTTER, *Appellant*, v. RICHLAND SCHOOL DISTRICT NO. 400 *et al*, *Respondents*.

*Rembert Ryals* (of *Critchlow, Williams, Ryals & Schuster*), for appellant.

*Philip M. Raekes* (of *Loney, Westland, Raekes & Rettig*), for respondents.

McINTURFF, C.J.—Plaintiff was employed by the Richland School Board (hereafter school board) to teach music at Columbia High School. He has taught music since 1965.

At the end of the 1971-72 school year Potter was assigned to teach music at the elementary level due to a levy failure. Since he would have no school activities in the evenings he committed himself to play professionally at various Elks Clubs. In October 1972 plaintiff signed a supplemental contract to supervise the band during evening football and basketball games on the weekend. The principal, Mr. Nash, was accordingly informed of possible conflicts and suggested that plaintiff make an agreement with another music teacher to take his place at the games if he were unable to attend.

On two occasions plaintiff attended the games up to half time and then left due to prior commitments, leaving the keys to the music department with a student band director to give to his replacement teacher, Mr. Ted Baer. Mr. Baer did not show up on two occasions and the students were left with no direct teacher supervision. The first occasion occurred on November 10, 1972, when plaintiff left a football game at half time. Mr. Baer testified he had informed plaintiff that he would be unable to attend the game that evening. The second absence occurred on December 1, 1972, when plaintiff left a basketball jamboree at half time. Mr. Baer stated that there could have been a misunderstanding on this latter occasion because of the manner communications were exchanged between the two. Mr. Baer testified that he "stuck[his] head in the office door where [plaintiff] was talking to a student, and told him I wouldn't be able to be at the game that night."

Board policy adopted March 29, 1959, required an annual appraisal of each employee which was to be the "subject of individual discussion between the employee and supervisor involved." The principal gave the plaintiff his annual appraisal on December 1, 1972 (the day of the second incident), but it was not discussed at that time. The evaluation summary indicated that plaintiff needed to improve his supervision over students and equipment. When the principal, Mr. Nash, discovered that Potter failed to show up at

the second game, it was at that time that he decided to recommend to the superintendent, Robert Eiler, that Potter be discharged.[1]

On January 15, 1973, the school board passed a resolution based upon the recommendation of the superintendent to discharge Mr. Potter. A notice was sent to the plaintiff informing him that the board had determined that there was "probable cause" to discharge plaintiff. The notice specified the causes for discharge.[2]

Mr. Potter requested a closed hearing,[3] which was held on February 14, 1973. In a 3 to 2 decision the board terminated plaintiff's contract effective February 16, 1973. Plaintiff appealed to the Superior Court and a trial de novo was held.[4]

The trial court determined that the following causes were supported by sufficient evidence to discharge Mr. Potter under RCW 28A.58.450;

(1) Failure to adequately supervise students assigned to the plaintiff;

(2) Lack of proper concern for the security of District facilities and equipment;

(3) Failure to perform duties as specified in the supplemental contract; and

---

[1]Mr. Nash testified: "I felt if he [Potter] had read the evaluation and he wanted to talk about it and everything, and then all of a sudden that very same night this incident in which the supervision of his class room had been designated to the student band director, I felt that this situation just couldn't be tolerated any longer."

[2]"1. Failure to adequately supervise students assigned to you.

"2. Lack of proper concern for security of District facilities and equipment.

"3. Failure to meet classes at scheduled times.

"4. Verbal and written complaints from parents.

"5. Inability to generate pupil enthusiasm for a growing, broad range music program.

"6. Failure to perform duties as specified in supplemental contract.

"7. Your letter of December 22, 1972, to the School Board which indicates your unwillingness to teach in the Richland School District during the remainder of the school year.

"8. Your letter of December 22, 1972, to the School Board which indicates your apparent lack of interest in your teaching assignment."

[3]RCW 28A.58.450.

[4]RCW 28A.58.480.

(4) Failure to meet classes at scheduled times.

The court found that the plaintiff was absent from the November 10 football game and the December 1 basketball jamboree; that plaintiff's lack of supervision was specifically brought to his attention on December 1; that there were other instances in which plaintiff failed to supervise students or school property during the 1972-73 school year; that lack of supervision of the band during athletic contests was also a problem during the 1971-72 school year; that the plaintiff knew there was no adult who would have supervised for him during his absence from the games; that he knew his responsibilities under his contract and voluntarily chose not to assume them; and that these acts constituted a breach of his contract, providing sufficient grounds for his discharge by the school board. Mr. Vandenberg, principal of Columbia High School and on a leave of absence for 1 year at the time of the trial, testified that he had placed Mr. Potter on probation during the 1970-71 school year in an effort to overcome problems similar to those that occurred during the 1972-73 school year.[5]

---

[5]Mr. Vandenberg testified:

"Q: With reference to the football games and basketball games, did he have a supplemental contract for 1971-72?

"A: Yes.

"Q: And what can you tell us about any lack of supervision, if any, regarding ball games?

"A: There were instances when Mr. Potter was not present, and this was brought to his attention, and in an addenda to to [sic] the evaluation—you see, this had been a problem over a period of two or three years, and when Mr. Potter would not be present at football or basketball games to supervise students, for which he was contracted.

". . .

"Q: [What] would be the major problem with Mr. Potter from what you have observed over the times you have been there and he was engaged as a music instructor, . . .

"A: I think it would have to be . . . whether Mr. Potter had really assumed his responsibility; whether he was really going to be in attendance at games, for example, . . . and I think that for quite some time there was a continual problem that kept recurring, so you were never certain that there would be the follow-through that you desired—the overall assumption of responsibility. I think there was always the overriding question that if Mr. Potter was not say at a

■■■ The broad issue is whether there was sufficient cause for discharge. Plaintiff contends that the discharge was illegal and improper because: (1) the defendant school district failed to place the plaintiff on probation during the 1972-73 school year; (2) none of plaintiff's actions constituted sufficient cause for discharge as they are remediable teaching deficiencies, citing *Wojt v. Chimacum School Dist. 49*, 9 Wn. App. 857, 516 P.2d 1099 (1973); (3) the December 1 evaluation was of no force and effect because it was not based on criteria established by the board as required by RCW 28A.67.065, and the evaluation was never discussed with the plaintiff in order to give him an opportunity to remedy the alleged deficiencies; and (4) plaintiff's absences from the games constituted at most a breach of the supplemental contract and could not be used to discharge plaintiff from his primary teaching contract. RCW 28A.67.074; *Kirk v. Miller*, 83 Wn.2d 777, 522 P.2d 843 (1974). It is evident from Mr. Vandenberg's testimony that plaintiff was placed on probation during the 1970-71 school year for problems similar to those for which he was discharged in the 1972-73 school year. This recurring problem of lack of supervision of students also persisted throughout the 1971-72 school year. Whether or not plaintiff's shortcomings as a teacher may be labeled remediable teaching deficiencies as that term is used in the *Wojt* case is immaterial. Plaintiff was placed on probation during the 1970-71 school year and did not substantially correct his failure to adequately supervise students during the following two school years. Under these circumstances, a school district may properly discharge a teacher.[6] We need not decide the legal sufficiency of the December 1 evaluation because it was not necessary for the board to again place plaintiff on probation pursuant to RCW 28A.67.065. *Kirk v. Miller, supra*, held that supplemental contracts covering extracurricular ac-

---

basketball or football game, or wasn't in the class room, then, of course, you have the problem of liability."

[6] *Wojt v. Chimacum School Dist. 49*, 9 Wn. App. 857, 516 P.2d 1099 (1973).

tivities were not governed by the continuing contract law. However, we are not concerned with the continuing contract law, RCW 28A.67.070, as covered in RCW 28A.67.074. We are concerned with grounds for discharge. It is our opinion that *Kirk* does not stand for the proposition that teacher *conduct* occurring during the performance or nonperformance of extracurricular duties may not be used as a basis for discharge. We find that the plaintiff's failure to adequately supervise students as required by the supplemental contract during athletic contests was properly considered by the board in making its determination to discharge plaintiff from his primary contract.

▮ Plaintiff urges that there is insufficient evidence to support findings of fact Nos. 6, 7, 8, 9, 10 and 11.[7] As to these findings of fact, we have reviewed the record and find

─────────────────────

[7]

"6

"The Court finds that the Board of Directors, Richland School District No. 400, did make an independent decision regarding probable cause which resulted in the Board's notification to Gary Potter by Exhibit No. 1.

"7

"The Court finds that the plaintiff's lack of supervision of his students and school equipment was specifically brought to his attention on December 1, 1972. The Court finds that the plaintiff, Gary Potter, was absent for a portion of the time from the November 10, 1972, football game and the December 1, 1972, jamboree, knowing that there was no adult who would have supervised for him during his absence.

"8

"The Court finds that the plaintiff knew fully his responsibilities under his special duty agreement (Exhibit 10) for supervision and that he voluntarily chose not to assume those responsibilities.

"9

"The Court finds that there were several other instances, during school year 1972-1973, in which Gary Potter exercised no supervision over students and property under his charge, including several times when he was absent from his orchestra class until the very end of the class and on other occasions he was gone from the orchestra class as much as he was present during the class. His absence from the orchestra class created as to Gayla Hardman, one of his students, a genuine fear for her safety.

"10

"The Court further finds that lack of supervision of students by Gary Potter was also a problem during school year 1971-72 as he

there is substantial evidence to support them. However, in relation to finding of fact No. 10 the plaintiff contends that his conduct during the 1971-72 school year is irrelevant because it is not material to the plaintiff's discharge during the 1972-73 school year. This argument is contra to the conclusion reached in the *Wojt* case that a failure of a teacher to substantially correct work-related deficiencies subsequent to an initial probationary period may be used by the school board as a basis for discharge. *See* Annot., 4 A.L.R.3d 1090, 1097 (1965).

In connection with finding of fact No. 11 the plaintiff also assigns error to the court's conclusion of law No. 1[8] to the effect that the establishment of evaluative criteria by the board of directors pursuant to RCW 28A.67.065 was unnecessary. Plaintiff argued in essence that RCW 28A .67.065 and RCW 28A.72.030 required that before the board adopts evaluative criteria there "must" be negotiations between the board and the elected representatives of the certificated employees. RCW 28A.67.065 does not apply in a discharge situation. That statute contemplates the use of evaluative criteria and procedures in connection with placing certificated personnel on probation.

Lastly, plaintiff claims that the board did not make

___

absented himself from his supervisory duties of the band during several athletic contests.

"11

"The Court finds the Board of Directors, Richland School District No. 400, had not officially adopted evaluative criteria under the provisions of RCW 28A.67.065, but does find that the administration did, in fact, cause evaluations of the teachers in the district to be made on forms identical for all in the district for at least school years 1971-1972 and 1972-1973. The form used was the same as shown by Exhibit 11.

[8]

"1

"Plaintiff's failure to exercise supervision over his students and school property was a direct breach of his contract of employment with the Richland School District, and also his special duty agreement, and constitutes sufficient grounds for his dismissal. The Board of Directors, Richland School District No. 400, properly proceeded under RCW 28A.58.450. Accordingly, the Court concludes the establishment of evaluative criteria by the Board of Directors was unnecessary."

an independent determination of probable cause. This contention need not be answered since the trial court heard the case "de novo," and it is clear from the record that its decision was reached independent of any conclusion arrived at by the school board. *Hattrick v. North Kitsap School Dist. 400*, 81 Wn.2d 668, 504 P.2d 302 (1972); *Wojt v. Chimacum School Dist. 49, supra.*

Judgment of the trial court is affirmed.

GREEN and MUNSON, JJ., concur.

Petition for rehearing denied June 11, 1975.

Review denied by Supreme Court July 29, 1975.